# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA SHULTZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-103 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| COURT OF COMMON PLEAS, | ) | |
| OF FAYETTE COUNTY, | ) | |
| KAREN KUHN, in her official | ) | |
| and individual capacities, | ) | |
| TAMMY LAMBIE, in her official | ) | |
| and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

For the reasons that follow, Defendants' Motion to Dismiss (Doc. 7) will be granted in part and denied in part.

### I. MEMORANDUM

As a preliminary matter, Plaintiff withdraws her Complaint as to Defendant Fayette County Court of Common Pleas, and as to Defendants Karen Kuhn ("Kuhn) and Tammy Lambie ("Lambie") in their official capacity. Pl.'s Opp'n Br. (Doc. 10) at 1. Plaintiff pursues both Counts I and II against Defendants Kuhn and Lambie, in their personal capacities.

**BACKGROUND**

Plaintiff alleges that she resides with her boyfriend, Robert Kelly ("Kelly"), a police officer. Compl. (Doc. 1) at ¶ 13. On or about September 30, 2013, the police were called to their home to investigate a possible domestic dispute. Id. at ¶ 14. While at the home, the police officers found stolen firearms allegedly belonging to Kelly. Id. Plaintiff maintains that she had no knowledge or reason to believe the firearms were stolen. Id. at ¶ 15. Later that day, Defendant Lambie, Plaintiff's supervisor, came, uninvited. to Plaintiff's home, and observed the situation. Id. at ¶ 16. On or about October 18, 2013, Plaintiff was terminated from her position by Defendant Kuhn, Defendant Lambie's supervisor. Id. at ¶ 18. Plaintiff believes that prior to her termination, Defendant Lambie informed Defendant Kuhn that Plaintiff was aware of Kelly's possession of stolen firearms, "when she knew or should have known with reasonable caution that Plaintiff did not know or have reason to believe that the firearms in question were stolen." Id. at ¶ 21. In addition, either one or both Defendants "disseminated" this allegedly false information to other members of Plaintiff's community. Id. at ¶ 22.

Plaintiff alleges in Count I that Defendants violated her First Amendment right of "intimate association" by terminating her employment because of her relationship with Kelly. Id. at ¶¶ 24-35. Count II alleges that Defendants violated her Fourteenth Amendment due process rights by harming her liberty interest in her reputation and terminating her employment. Id. at ¶¶ 36-49. Defendants Lambie and Kuhn move to dismiss these remaining individual capacity claims against them. Def.'s Br. (Doc. 8).

## ANALYSIS

### Qualified Immunity

Qualified immunity is an affirmative defense for government officials accused of violating a citizen's constitutional or statutory rights. Hunter v. Bryant, 502 U.S. 224, 227 (1991); Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006). Here, Defendants argue that they have qualified immunity from liability for money damages[1] sought by Plaintiff because she failed to establish that Defendants violated any clearly established constitutional or statutory right. Def.'s Br. at 7-8.

While qualified immunity can protect certain government officials from civil suit, "[t]he privilege of qualified immunity . . . can be overcome when state officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wright v. Philadelphia, 409 F.3d 595, 599-600 (3d Cir. 2005). A right is "clearly established" when, objectively, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Estate of Lagano v. Bergen Cnty. Prosecutor's Office, No. 13-3232, ---F.3d ---, 2014 WL 5155213 (3d Cir. Oct. 15, 2014).

In Lagano, the Third Circuit recently found that a due process interest may be "clearly established," even as applied to a novel factual scenario. Lagano, 2014 WL 5155213 at *7 (citing Hope v. Pelzer, 536 U.S. 730 (2002) ("[A]lthough earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."). In the instant matter, the due process liberty interest at issue has clearly been established as applied to similar facts. See Hill v.

---

[1] The Court notes that in a "stigma-plus" suit, "the defense of qualified immunity is available only for damages claims -- not for claims requesting prospective injunctive relief," such as a name-clearing hearing. Hill v. Kutztown, 455 F.3d 225, 244 (3d Cir. 2006).

Kutztown, 455 F.3d 225 (3d Cir. 2006) (holding that when a local government employee's reputation is harmed via the public dissemination of a false statement, and that employee is terminated, his Fourteenth Amendment liberty interest has been violated under the "stigma-plus" doctrine). Since the specific due process interest being challenged has existed since 2006, and even applied to similar facts, the Court finds that such a right is "clearly established" and the shield of qualified immunity is broken.

The Court further finds that the freedom of intimate association is "clearly established." Defendant argues that the freedom of intimate association is rooted in the Fourteenth Amendment, not the First Amendment as alleged by Plaintiff. Def.'s Br. at 5. The Court notes that there is some debate on this issue. See Gardner v. Barry, 2010 WL 4853885, n. 5 (M.D.Pa. 2010) ("The Supreme Court's decisions in Roberts [v. United States, 468 U.S. 609 (1984)] and its progeny do not clearly indicate whether the right to intimate association is rooted in the First Amendment, the Fourteenth Amendment, or both."). But see Behar v. Pennsylvania Dept. of Transp., 791 F.Supp.2d 383 (M.D.Pa. 2011) ("[O]nly the freedom of expressive association is based upon the First Amendment. The freedom of intimate association, which is based on the Due Process Clause of the Fourteenth Amendment, is properly characterized as a substantive due process right and recognizes the right of an individual to develop deeply personal attachments with other individuals."). The Court need not settle this issue in order to determine that the freedom of intimate association is a "clearly established" constitutional right, as its existence was noted by the Supreme Court three decades ago. Roberts, 468 U.S. 609.

As both of Plaintiff claims are rooted in clearly established constitutional rights, Defendants do not enjoy qualified immunity.

**Federal Rule of Civil Procedure 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

**Count I**

In Count I, Plaintiff alleges that Defendants violated her freedom to intimately associate by firing her solely because of "her intimate relationship with her boyfriend." Pl.'s Opp'n Br. at 3. Defendants argue that Plaintiff's claim should be dismissed for failure to state a cause of action upon which relief can be granted. See Def.'s Br. at 6. Defendants argue that "[i]t is clear from the face of the Complaint that Plaintiff was terminated because of her knowledge that the guns at issue were stolen." Id. at 6.

Plaintiff alleges that Defendants arranged for Plaintiff's termination because of Plaintiff's association with Kelly – a potential criminal – not because of their belief in Plaintiff's independent wrong-doing. Indeed, Plaintiff maintains that at no time prior to her termination did Defendants investigate either the claims against Kelly or Plaintiff's knowledge of the allegedly stolen guns. Compl. at ¶ 20. While Plaintiff does allege that she was *told* that she was being terminated because of her violation of the Administrative Office of Pennsylvania Courts ("AOPC") Code of Conduct for Employees, she also alleges that this was a pretext, and that the true reason for her termination was her association with Kelly. Compl. at ¶¶ 18, 27. Dismissal is

5

inappropriate where issues of material fact as to the motive for Plaintiff's termination clearly remain.

**Count II**

Count II of the Complaint alleges that Defendants violated Plaintiff's Fourteenth Amendment due process rights. In particular, Plaintiff alleges a "stigma-plus" claim for damage to her liberty interest in her reputation. See Pl.'s Opp'n Br. at 5. Defendants argue that Plaintiff has failed to state a claim for relief in that her factual allegations are "insufficient." Def.'s Br. at 7. Defendants argue, in the alternative, that even if Plaintiff has alleged sufficient facts, the only remedy available is a name-clearing hearing, and therefore Count II of her Complaint seeking money damages should be dismissed for this independent reason. Id.

**Sufficiency of Factual Allegations**

"In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest." Hill, 455 F.3d at 236. In order to satisfy the "stigma" prong of this claim, Plaintiff must allege that Defendants publically made false, stigmatizing statements about her. Id. Plaintiff alleges that Defendants told others in the community that she was aware of Kelly's possession of stolen firearms, thus harming her reputation. She likewise avers that said statement is "materially false." Compl. at ¶ 38. Lastly, Plaintiff alleges that she was terminated, demonstrating a deprivation of some additional right or interest (the "plus"). Id. at ¶ 18. Accordingly, Plaintiff has alleged sufficient facts to withstand Defendants' motion.

6

**Remedy**

Plaintiff also seeks money damages from Defendants for the allegations contained in Count II. See Pl.'s Opp'n Br. at 6. Defendants argue that Count II should be dismissed, in part, because money damages are not available. Def. Br. at 7. It remains unclear, however, whether money damages are available in this circuit. The Court of Appeals for the Third Circuit has left open the issue of whether a successful plaintiff in a "stigma-plus" suit would be entitled to damages in addition to, or instead of, a name-clearing hearing, but has indicated the possibility that a name-clearing hearing "might not always 'cure all the harm caused by stigmatizing government comments.'" See Graham v. Philadelphia, 402 F.3d 139, 143 n. 3 (3d Cir. 2005) (quoting Ersek v. Springfield, 102 F.3d 79, n.6 (3d Cir. 1996)). Moreover, at least one court of appeals has held that money damages are available in stigma-plus cases. See Patterson v. Utica, 370 F.3d 322, 338 (2d Cir. 2004) (holding that money damages are appropriate in a stigma-plus claims where the liberty or property deprivation for which the plaintiff sought compensation would not have occurred had proper procedure been observed). As entitlement to money damages is an open question in this circuit, it would be premature to decide this issue in the context of a motion to dismiss. Defendant may reassert this argument for consideration at a later date, if applicable.

## II. ORDER

For the reasons stated above, Defendants' Motion to Dismiss (**Doc. 7**) is **GRANTED** only as to Defendant Fayette County Court of Common Pleas and as to Defendants Kuhn and Lambie in their official capacities. Defendants' Motion to Dismiss is **DENIED** in all other respects.

IT IS SO ORDERED.


October 22, 2014                              s\Cathy Bissoon
                                              Cathy Bissoon
                                              United States District Judge


cc (via ECF email notification):

All Counsel of Record